# In the United States Court of Federal Claims

No. 21-1138C
(Filed: October 7, 2021)

```
*****************************************
SAGAM SECURITE SENEGAL,                  *
                                         *
                Plaintiff,               *
                                         *   Postjudgment Motion for Leave to
v.                                       *   Intervene; Timeliness; Bid Protest
                                         *
THE UNITED STATES,                       *
                                         *
                Defendant.               *
*****************************************
```

<u>Thomas A. Coulter</u>, Washington, DC, for plaintiff.

<u>James W. Poirier</u>, United States Department of Justice, Washington, DC, for defendant.

<u>Robert Nichols</u>, Washington, DC, for putative intervenor.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

      In this preaward bid protest now on appeal to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), plaintiff SAGAM Sécurité Senegal ("SAGAM") challenged the cancellation of a solicitation by the United States Department of State ("State" or "agency"). The court sustained the protest and entered an injunction in SAGAM's favor. The contract awardee under the cancelled solicitation, Torres-SAS Security LLC Joint Venture ("Torres"), now moves to intervene in the protest. For the reasons set forth below, the court denies Torres's motion.

### I. BACKGROUND

      For approximately thirty-five years, SAGAM has been providing local guard services to the United States embassy in Dakar, Senegal. State issued Solicitation No. 19AQMM18R0332 for the continuation of these services on April 19, 2019, and amended the solicitation three times. The awardee would perform contract services for a base year, with the possibility of extending performance for four option years. Award would go to the lowest price, technically acceptable proposal.

      Three offerors submitted proposals, with only SAGAM and Torres entering into discussions with the agency once the third offeror had been eliminated. In a second round of

discussions soliciting best and final offers, the contracting officer ("CO") disclosed specific elements of SAGAM's proposal to Torres. State chose Torres as the awardee because of Torres's lower price.

SAGAM lodged a protest at the Government Accountability Office ("GAO") to challenge the agency's award decision, alleging that Torres's price was too low to meet guard compensation requirements in Senegal. State took corrective action to evaluate the compensation plans of the offerors. The GAO therefore dismissed SAGAM's protest as academic.

Once SAGAM's first GAO protest had been dismissed, the agency's legal staff discovered that the CO had violated the Procurement Integrity Act ("PIA"), 41 U.S.C. §§ 2101-2107, by disclosing SAGAM's proposal information to Torres. The CO concluded that the disclosure had an impact on the procurement and State decided to cancel the solicitation. Although SAGAM protested the cancellation at the GAO, SAGAM's second GAO protest was dismissed as untimely. SAGAM's protest in this court followed. Torres expressly declined to seek to intervene.

In its June 25, 2021 decision, the court concluded that State improperly disclosed portions of SAGAM's proposal to Torres and then erred when it cancelled the solicitation and ordered as follows:

> [T]he court **DIRECTS** State to restore this competition to its status precancellation, **ENJOINS** State from cancelling Solicitation No. 19AQMM18R0332 and from resoliciting the contract requirement, **DIRECTS** State to disqualify Torres as the beneficiary of improperly disclosed information taken from SAGAM's proposal, and **DIRECTS** State to proceed to award the contract to the remaining offeror in the competitive range if that offeror is determined to be responsible.

SAGAM Securite Senegal v. United States, No. 21-1138C, 2021 WL 3140559, at *18 (Fed. Cl. June 25, 2021). Although the decision was filed under seal, these directives were set forth in the publicly available judgment issued the same day.

Defendant filed a notice of appeal on August 19, 2021. Three weeks later, on September 10, 2021, Torres sought to intervene in the protest by filing a motion in this court. Torres states that it "wishes to intervene so that its counsel may gain access to protected information under the Protective Order and participate in the appeal at the Federal Circuit." Torres's Mot. 3. Torres represents that defendant does not oppose the motion to intervene. However, SAGAM opposes the motion. The motion is fully briefed and ripe for a ruling.[1]

## II.  DISCUSSION

### A.  Timeliness Requirement

---

[1] Defendant did not respond to Torres's motion.

The requirements for intervention are to be construed in favor of intervention. Am. Mar. Transp., Inc. v. United States, 870 F.2d 1559, 1561 (Fed. Cir. 1989)). Nonetheless, pursuant to Rule 24 of the Rules of the United States Court of Federal Claims, only timely motions to intervene may be granted. "Timeliness is to be determined from all the circumstances," and is an issue committed to the court's discretion. NAACP v. New York, 413 U.S. 345, 366 (1973). As Torres notes, the court considers three factors when determining whether a motion to intervene is timely:

> (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene;
>
> (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention[; and]
>
> (3) [the] existence of unusual circumstances militating either for or against a determination that the application is timely.

Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co., 669 F.2d 703, 707 (C.C.P.A. 1982) (footnotes omitted); see also Bannum, Inc. v. United States, 96 Fed. Cl. 364, 378 (2010) (applying the Sumitomo factors to a prejudgment motion to intervene in a bid protest (citing Belton Indus., Inc. v. United States, 6 F.3d 756, 762 (Fed. Cir. 1993))), aff'd, 451 F. App'x 953 (Fed. Cir. 2012).

## B. Torres Fails the Timeliness Test

As noted above, SAGAM first protested the cancellation of the solicitation at the GAO. The public version of the GAO's decision dismissing SAGAM's second protest, which describes the bases of SAGAM's protest, is dated March 22, 2021. SAGAM Securite Senegal, B-418583.2, 2021 CPD ¶ 155 (Comp. Gen. Mar. 22, 2021). Torres thus had notice on March 22, 2021, that SAGAM alleged that a PIA violation rendered State's cancellation of the solicitation improper.

On March 30, 2021, SAGAM filed its protest in this court. On March 31, 2021, after being notified of the protest, counsel for Torres informed defendant's counsel that Torres decided not to move to intervene. On April 22, 2021, SAGAM filed a redacted complaint, which clearly outlined its requested relief that Torres be disqualified and that award be made to the only remaining offeror in this competition. Thus, on April 22, 2021, Torres had notice that it might be disqualified from the competition, that resolicitation of the requirement might be enjoined, and that award of the contract might be made to SAGAM. Torres still did not move to intervene in this protest.

On June 25, 2021, the judgment entered on the public docket of this case disclosed all of the elements of the injunctive relief awarded SAGAM:

- The United States Department of State ("State") is directed to restore this

> competition to its status precancellation;
>
> - State is enjoined from cancelling Solicitation No. 19AQMM18R0332 and from resoliciting the contract requirement;
>
> - State is directed to disqualify Torres as the beneficiary of improperly disclosed information taken from SAGAM's proposal; and
>
> - State is directed to proceed to award the contract to the remaining offeror in the competitive range if that offeror is determined to be responsible.

Judgment, June 25, 2021. Torres again chose not to move to intervene. Rather, it was not until September 10, 2021, three weeks after defendant filed its notice of appeal, that Torres finally filed a motion to intervene.

Torres does not dispute that it had notice of this protest from the outset of the litigation in this court. Torres argues, nevertheless, that "any timeliness concerns should be outweighed by the two other factors: prejudice and existence of unusual circumstances." Torres's Mot. 3. The court cannot ignore, however, "the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene." Sumitomo, 669 F.2d at 707. Here, Torres waited for this protest to be decided, and then, again, for a notice of appeal to be filed, before applying to become a party to this litigation. Over five months elapsed between the filing of the complaint and the filing of Torres's motion to intervene, which, in a bid protest, is an eternity.

In Belton Industries, Inc., the Federal Circuit affirmed the denial of postjudgment motions to intervene filed by the countries of Sri Lanka and Peru at the Court of International Trade, and the description of the prejudicial effect of such untimely filings is instructive:

> Both Sri Lanka and Peru were aware of the Court of International Trade proceedings from their inception. Although their rights to intervene arose when [the appellees] instituted proceedings in the Court of International Trade, Sri Lanka and Peru chose to wait nearly two years before seeking to intervene. If the trial court had allowed Sri Lanka and Peru to intervene, appellees would have suffered prejudice. Specifically, appellees would have had to defend against two additional parties and address new issues in a case that had already been decided. This prejudice outweighs any harm to Sri Lanka and Peru caused by their own tactical decisions not to appear in the Court of International Trade proceeding. No unusual circumstances warrant granting the motions.
>
> Both Sri Lanka and Peru were content to sit on the sidelines during this dispute and let other parties, particularly the United States Government, do the heavy lifting. They sought to intervene only when they realized, too late, that these other parties would not do all of their work for them. This court discerns no abuse of discretion in the Court of International Trade's weighing of the

Sumitomo factors or its denial of Sri Lanka's and Peru's motions to intervene.

6 F.3d at 762 (citing Sumitomo, 669 F.2d at 707-08). Similarly, Torres made a tactical decision and sat out this litigation. It waited too long to intervene in this protest and this factor weighs heavily against its request to intervene.

As far as the extraordinary circumstances factor is concerned, nothing in Torres's motion persuades the court that its dilemma is anything but the natural result of a decision to abstain from litigation in the hope that the court would rule in favor of defendant. Such gambles do not always pay off, cf. Torres's Mot. 1 (stating that Torres's "interests have been impacted by the Court's disposal of the case"), but that is hardly extraordinary. Torres asserts, nonetheless, that it is extraordinary that it will "bear the brunt of [the] State Department's error," noting its disqualification from the procurement of this contract requirement. Id. at 3; see also Torres's Reply 2 (contending that "enjoining the cancellation of the solicitation and requiring the Government to award the contract to Plaintiff present[] unusual circumstances"). But the loss of an award opportunity because of a decision not to intervene in a bid protest is not unusual–government errors often lead to an award to the protestor, which is the result here. No extraordinary circumstance permits Torres to escape the consequences of its own decision not to intervene in this protest at the outset.[2] The extraordinary circumstances factor, too, weighs against intervention.

Finally, turning to the weighing of prejudice factor, Torres now asserts that it "will be hamstrung in supporting the Government's appeal." Torres's Mot. 3; see also Torres's Reply 2 (stating that Torres "will be prejudiced because its attorneys will not be able to gain access under the Protective Order" entered in this case). Torres is not significantly prejudiced. It may request permission to supply an amicus brief to the Federal Circuit, and it may, as it has, apply to intervene as a party to defendant's appeal before the Federal Circuit. As for access to protected information, the court observes that the parties did not request any redactions to the merits opinion filed under seal in this case; Torres therefore has full access to the court's analysis of the CO's PIA violation, the agency's irrational corrective action, and the tailoring of injunctive relief to the specific facts and circumstances of this bid protest. In addition, any prejudice potentially flowing from Torres's disqualification is mitigated by defendant's appeal–the government is once again carrying Torres's water by appealing the court's judgment. The prejudice to Torres appears to be minimal, if any.

SAGAM, on the other hand, would be forced to litigate against a second, late-arriving opponent and expend additional resources in doing so. See Pl.'s Opp'n 11 ("SAGAM has already expended significant time and resources prosecuting this bid protest and this case has concluded. SAGAM will be substantially prejudiced by the additional time and cost of

---

[2] Torres references one postjudgment intervention in a bid protest decided by this court, but that intervention involved an effort to obtain an appellate clarification of a jurisdictional question. See Red River Holdings, LLC v. United States, No. 09-185C, 2009 WL 3423838, at *1 (Fed. Cl. Oct. 22, 2009) (granting intervention because "trial courts ha[d] not been consistent in their rulings concerning jurisdiction over protests related to maritime and admiralty procurements"). There is no such jurisdictional controversy in this case.

re-litigating this case against Torres . . . ." (citations omitted)).  As a general rule, such prejudice to a party opposing a postjudgment request to intervene outweighs the putative intervenor's allegations of prejudice.  E.g., E. Mins. Int'l, Inc. v. United States, 168 F.3d 1322 (Fed. Cir. 1998) (table); Belton Indus., Inc., 6 F.3d at 762; Excelsior Ambulance Serv., Inc. v. United States, 126 Fed. Cl. 69, 72 (2016); Cheyenne-Arapaho Tribes of Indians of Okla. v. United States, 1 Cl. Ct. 293, 296 (1983); see also Cherokee Nation of Okla. v. United States, 54 Fed. Cl. 116, 119 (2002) (denying tribe's prejudgment motion to intervene because the tribe initially refused to be joined in the suit, the prejudice to the existing parties nearing settlement outweighed the prejudice to the putative intervenor, and there were no extraordinary circumstances weighing in favor of intervention).  Here, too, the prejudice to SAGAM outweighs the prejudice to Torres; thus, the prejudice factor also weighs against intervention at this late date.

### III.  CONCLUSION

Because all of the Sumitomo factors weigh against a postjudgment intervention in these circumstances, the court **DENIES** Torres's motion to intervene.[3]

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge

---

[3] In its reply brief, Torres suggests that this court has the discretion to permit intervention "in light of the facts and circumstances of this case."  Torres's Reply 3-4 (citing Mitchco Int'l, Inc. v. United States, 149 Fed. Cl. 683, 685 (2020)).  In Mitcho International, Inc., however, the motion to intervene was filed within two weeks of the filing of the bid protest, and well before the filing of the administrative record or dispositive briefing; accordingly, the Sumitomo factors governing untimely motions to intervene were not considered by the court.  Id. at 684-85.  In contrast, Torres's motion is a postjudgment request to intervene.  In the court's view, it would be an abuse of discretion to ignore the Sumitomo factors and grant Torres's untimely motion.