# In the United States Court of Federal Claims

No. 21-1138C
(Filed Under Seal: October 6, 2021)
(Reissued for Publication: October 22, 2021)[*]

```
*************************************
SAGAM SECURITE SENEGAL,              *
                                     *
                 Plaintiff,          *
                                     *   Preaward Bid Protest; Motion for Stay
v.                                   *   of Judgment; RCFC 62(d)
                                     *
THE UNITED STATES,                   *
                                     *
                 Defendant.          *
*************************************
```

Thomas A. Coulter, Washington, DC, for plaintiff.

James W. Poirier, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

      In this preaward bid protest now on appeal to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), plaintiff SAGAM Sécurité Senegal ("SAGAM") challenged the cancellation of a solicitation by the United States Department of State ("State" or "agency"). Specifically, SAGAM alleged that State improperly disclosed portions of SAGAM's proposal to Torres-SAS Security LLC Joint Venture ("Torres") and then erred when it cancelled the solicitation. The court agreed with SAGAM. In its opinion and order filed on June 25, 2021 ("Opinion"), the court ordered as follows:

> [T]he court **DIRECTS** State to restore this competition to its status precancellation, **ENJOINS** State from cancelling Solicitation No. 19AQMM18R0332 and from resoliciting the contract requirement, **DIRECTS** State to disqualify Torres as the beneficiary of improperly disclosed information taken from SAGAM's proposal, and **DIRECTS** State to proceed to award the contract to the remaining offeror in the competitive range if that offeror is

---

    [*] The court initially issued this Opinion and Order under seal with instructions for the parties to propose any redactions. The parties informed the court that no redactions were necessary to the Opinion and Order.

determined to be responsible.

SAGAM Securite Senegal v. United States, No. 21-1138C, 2021 WL 3140559, at *18 (Fed. Cl. June 25, 2021).

Defendant filed a notice of appeal on August 19, 2021. Then, on August 30, 2021, defendant filed a motion for a partial stay "of the enforcement of the judgment entered on June 25, 2021 so that we may appeal." Def.'s Mot. 1. The only aspect of the court's judgment that defendant does not seek to stay is the directive that State not issue a new solicitation for the contract requirement.

SAGAM filed its opposition brief on September 13, 2021; defendant filed its reply brief on September 20, 2021. Defendant's motion is thus ripe for resolution. For the reasons stated below, the court denies defendant's motion.[1]

## I.  BACKGROUND

To provide the proper context for its ruling, the court recites much of the background included in the Opinion. See SAGAM, 2021 WL 3140559, at *1-2. For the same reason, the court also reproduces the section of the Opinion that explains how the court's injunction was tailored to address both the egregious violation of procurement integrity principles by the contracting officer ("CO") and the interests of the parties moving forward. See id. at *16-18.

### A. The Competition Produces a Competitive Range of Two Offerors and an Award by State to Torres

For approximately thirty-five years, SAGAM has been providing local guard services to the United States embassy in Dakar, Senegal. State issued Solicitation No. 19AQMM18R0332 for the continuation of these services on April 19, 2019. The awardee would perform contract services for a base year, with the possibility of extending performance for four option years. Award would be made to the lowest price, technically acceptable proposal.

Three offerors submitted proposals: SAGAM, Torres, and SAKOM Services WI LLC ("SAKOM"). None of the proposals was acceptable to State as submitted. Although the agency believed that both SAGAM and Torres could render their proposals acceptable through discussions, SAKOM's proposal was eliminated from the competitive range. Once discussions had occurred and revised proposals were evaluated, both SAGAM and Torres were deemed to have submitted acceptable proposals.

State then initiated further discussions with both offerors. The CO sent discussion letters requesting further information and a best and final offer from each offeror by December 13, 2019. The CO included a number of very specific items in its discussion letter with Torres that disclosed specific elements of SAGAM's proposal.

---

[1] Two other motions are pending in this matter but these address unrelated topics.

Once State received the final, revised proposals from SAGAM and Torres, it chose Torres as the awardee because of Torres's lower price. The agency notified SAGAM on March 10, 2020, that Torres had been selected for award.

### B. The First Corrective Action Taken by State

On March 17, 2020, SAGAM lodged a protest at the Government Accountability Office ("GAO") to challenge the agency's award decision. SAGAM alleged that Torres's employee compensation plan was not technically acceptable because Torres's price was unreasonable and unrealistic. On April 8, 2020, State filed a notice of corrective action, informing the GAO that the agency would make a new award decision once further evaluation procedures and, potentially, further discussions and proposal revisions, were complete.

There is no documentation in the record as to State's corrective action between April 14, 2020, and November 18, 2020, when an internal memorandum was circulated by the CO on the topic of a possible Procurement Integrity Act ("PIA") violation in this procurement. Therein, the CO acknowledged that she took information from SAGAM's compensation plan to request additional clarifications regarding Torres's compensation plan. The CO also concluded that the disclosure caused an impact on the procurement, a view that was shared by the contracting hierarchy at State. At the conclusion of the CO's memorandum, a box was checked to indicate that the agency's Head of Contracting Activity ("HCA") concurred with her assessment that a procurement integrity violation had an impact on the procurement, and further stated that the contacting officer must cancel the solicitation.

### C. The Second Corrective Action Taken by State

On December 2, 2020, State emailed SAGAM a notice of solicitation cancellation. As part of that notice, the agency stated that the solicitation was being cancelled because State violated the PIA and the PIA violation impacted the procurement. In the notice, the agency also announced its intention to issue a new solicitation in the near future. SAGAM was invited to compete, once again, for the contract requirement, as was Torres. Although SAGAM attempted to protest the cancellation of the solicitation at the GAO, the GAO dismissed the protest as untimely. The GAO's decision issued on March 22, 2021.

### D. The Court's Ruling on the Merits of SAGAM's Protest

On March 30, 2021, SAGAM filed a protest in this court challenging the cancellation of the solicitation by State, i.e., the agency's second corrective action. The narrow question before the court was whether State's decision to cancel the tainted solicitation and to issue a new solicitation was rational in light of the CO's PIA violation. SAGAM contended that

> State's only rational course of action, once the PIA violation was uncovered by the agency's legal staff, was to disqualify Torres from the competition. [Further,] the cancellation decision violated various fairness provisions in the Federal Acquisition Regulation ("FAR"), codified in Title 48 of the Code of Federal Regulations.

Id. at *4.  The court agreed, and continues to agree, with both of these assertions.

As explained in its Opinion, the record showed an undisputed violation of the PIA by the CO.  Simply put, the CO shared elements of SAGAM's proposal with Torres so that Torres could improve its proposal:

> The information in SAGAM's proposal that was passed by the CO to Torres related to the exigencies of complying with local labor laws and labor agreements in Senegal and set forth SAGAM's understanding of those local conditions.  This understanding was essential to SAGAM's plan for the compensation and benefits that would be provided to its guard force.

Id. at *6.  The disclosed information was lifted directly from footnotes to a detailed chart in SAGAM's proposal.  That chart

> included citations to provisions of laws and labor agreements to explain specific cost categories in SAGAM's proposal, so as to provide State with the rationale for the costs of contract performance proposed by SAGAM.  The information conveyed by the CO to Torres was not simply a general reference to publicly available laws and labor agreements–each of SAGAM's citations to these laws and agreements was linked to specific aspects of contract performance and contract costs.

Id. (citation omitted).  The court concluded that the CO violated the PIA by sharing SAGAM's cost and pricing data with Torres, and also violated fundamental fairness provisions of the FAR.

The court then reviewed, under the arbitrary and capricious standard, State's decision to not disqualify Torres, cancel the existing solicitation, and simply resolicit the contract requirement.  The court found that State's corrective action was irrational because "cancellation does nothing to remedy the improper disclosure to Torres–cancellation of the solicitation followed by the issuance of a new solicitation, as is contemplated here, merely perpetuates the agency's procurement error so that Torres can continue to benefit from the CO's unfairness to SAGAM and her violation of the PIA."  Id. at *7.  The court further observed that once the legal department at State had uncovered the CO's PIA violation, "the CO and State acknowledged that a PIA violation occurred but failed to take steps which would restore fairness to this procurement."  Id. at *8.

In these unusual circumstances, where State turned a blind eye to the unfairness of its cancellation decision, its corrective action was arbitrary and capricious, notwithstanding the deference required under the standard of review articulated by the Federal Circuit in Dell Federal Systems, L.P. v. United States, 906 F.3d 982 (Fed. Cir. 2018).  The court agreed with SAGAM that "that the integrity of this procurement was tainted, and that any reasonable corrective action was required to address, in some substantive way, the fact that Torres now possesses competition-sensitive information that it has no right to possess."  SAGAM, 2021 WL 3140559, at *10.  The court compared the facts of this case to other protests where information was

improperly shared with an offeror and concluded that "[d]isqualification is a tool that can level the competitive playing field." Id. at *13 (citing Guardian Techs. Int'l, B-270213 et al., 96-1 CPD ¶ 104 (Comp. Gen. Feb. 20, 1996)). Indeed, the court held that in the unique circumstances of this procurement, the only rational corrective action that would cure the CO's PIA violation and preserve competitive fairness was the disqualification of Torres.

### E. Tailored Injunctive Relief

After reaching its conclusion on the merits of SAGAM's protest, the court determined that injunctive relief was appropriate and then analyzed how that relief should be tailored:[2]

> In addition to prevailing on the merits of its protest, SAGAM has established that it will suffer irreparable harm if the court withholds injunctive relief, that the balance of hardships tips in its favor, and that an award of injunctive relief is in the public interest. Thus, the issuance of a permanent injunction is warranted. In issuing a permanent injunction, this court tailors that relief so that any harm to the government, private parties, and the public interest is minimized. E.g., Heritage of Am., LLC v. United States, 77 Fed. Cl. 66, 79 (2007). Having considered the parties' recommendations as to the terms of a permanent injunction (all of which are unacceptable to the agency), the court imposes an injunction that will safeguard fundamental fairness principles.
>
> At the outset, the court rejects defendant's favored choice among the actions proposed by the parties: there is no need to remand the agency's cancellation and resolicitation plan to the HCA to obtain a second opinion as to whether the plan is rational and whether the agency should reconsider its decision not to disqualify Torres. It is now time to fix the mess that State has made of this procurement, without further delay.
>
> The only effective solution here is to restore this competition to its status before cancellation by enjoining the cancellation of the solicitation, enjoining any resolicitation of the requirement, disqualifying Torres as the beneficiary of improperly disclosed information taken from SAGAM's proposal, and having the agency proceed to award the contract to the only remaining offeror in the competitive range (i.e., SAGAM), if that offeror is found to be a responsible offeror. Cf. Parcel 49C Ltd. P'ship v. United States, 31 F.3d 1147, 1154 (Fed. Cir. 1994) (holding that, in the context of an improper cancellation, the proper "injunctive remedy merely restores the status quo ante the illegal cancellation"). This solution is the only one that cures the PIA violation and does not penalize SAGAM for the improper behavior of the CO.
>
> Defendant argues, nonetheless, that the court does not have the power to compel the award of a contract to a particular offeror. It is true that the "[s]election of a contractor among the [offerors] and award of the contract are

---

[2] The court has expanded two short citations into full citations in this quotation.

improper exercises of the court's authority." CCL Serv. Corp. v. United States, 43 Fed. Cl. 680, 688 (1999); see also Scanwell Lab'ys, Inc. v. Shaffer, 424 F.2d 859, 869 (D.C. Cir. 1970) ("It is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties."). But here the court did not make a competitive range of one–that circumstance is the product of the agency's evaluation of SAGAM's and Torres's proposals and the contamination of this procurement by the CO. The injunction in this matter bars the agency's cancellation of the solicitation and resolicitation, as both of these actions are arbitrary, capricious, and violate fairness standards, and simply requires the government to "eliminate the . . . taint of the prior proceedings." CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1575 (Fed. Cir. 1983). The court does not thereby make a contract between State and SAGAM, it instead requires State to implement its only remaining lawful option in this procurement. See Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 371 (2004) (enjoining the agency in that protest "from proceeding with performance of the contract with any entity other than [the protestor] provided that the Corps finds [the protestor] to be a responsible contractor").

This court has enjoined the improper cancellation of a solicitation on a number of occasions. E.g., Tolliver Grp., Inc. v. United States, 151 Fed. Cl. 70, 120 (2020). In rare circumstances, this type of injunction leaves the agency with only one lawful option, award to the protestor. The following passage from Parcel 49C discusses the effect of an injunction that was not very different from the injunction required here:

> In this case, . . . the trial court did not order the award of the contract to Parcel 49C. Instead, the trial court properly enjoined the illegal action and returned the contract award process to the status quo ante any illegality. Before the illegal cancellation, [the General Services Administration] had announced the intended award to Parcel 49C. The court's injunction, however, does not order the award of the contract to Parcel 49C. The court's order merely restores the posture of the process before the illegal cancellation. The award process is not complete. The process will commence from where it left off with the contract award flowing from an <u>orderly and lawful proceeding</u>. The Court of Federal Claims' injunction has the effect of returning [the solicitation] to its pre-cancellation posture and removing the illegal taint.

31 F.3d at 1153 (emphasis added). In that protest, "[t]he Government retain[ed] the power to proceed with its award process or to terminate the award process for any legal reason." Id. at 1154 (emphasis added). Here, State has the discretion to terminate the award process if SAGAM is not a responsible offeror, but there are no other lawful reasons that permit State to avoid an award to SAGAM.

Defendant also argues that the disqualification of Torres is beyond the

power of the court, relying on Axiom Resource Management, Inc. v. United States, 564 F.3d 1374 (Fed. Cir. 2009).  According to defendant, this court would "step into the shoes of the contracting officer" were it to disqualify Torres from the competition.  Def.'s Suppl. Br. 12 (citing Axiom, 564 F.3d at 1381-82).  The referenced passage from Axiom, however, criticizes the trial court for conducting a de novo review of potential organizational conflicts of interests, instead of reviewing the record of the procuring agency's conduct under the arbitrary and capricious standard.  Here, State's failure to disqualify Torres after the discovery of the CO's PIA violation was arbitrary, capricious, and fundamentally unfair in contravention of the FAR.  In directing the agency to disqualify Torres, the court has adhered to the standard of review in both Axiom and Dell Federal.

      Finally, defendant raises concerns that the contract award to SAGAM will pose a number of risks for State and even for SAGAM.  Having duly considered these concerns, the court notes that the difference between SAGAM performing extensions of the incumbent contract through March 31, 2022, and performing the base year of a new contract, which includes four option years, through the summer of 2022, does not appear to have much impact on the risks identified in the CO's declaration.  The court is not persuaded that the risks identified by the CO, in these circumstances, outweigh the importance of the permanent injunction in favor of SAGAM.

Id. at *16-18.

### F. Defendant's Motion for a Partial Stay of the Court's Judgment

In the motion now before the court, defendant argues both that the court erred when it found State's corrective action to be irrational, and that the court lacked the authority to enter the injunction in favor of SAGAM that directs State to take certain actions in this procurement.  Defendant also argues that the judgment compels State to make an award decision that will moot its appeal before the Federal Circuit, and that the loss of the government's opportunity to appeal the court's judgment constitutes irreparable harm.  SAGAM opposes the motion and the court deems oral argument unnecessary.

## II.  DISCUSSION

### A.  Standard of Review

"Unless a court issues a stay, a trial court's judgment . . . normally takes effect despite a pending appeal."  Coleman v. Tollefson, 575 U.S. 532, 539 (2015).  A stay of the execution of a judgment pending appeal is "an intrusion into the ordinary processes of administration and judicial review."  Nken v. Holder, 556 U.S. 418, 427 (2009) (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)).  It "is not a matter of right, even if irreparable injury might otherwise result to the appellant."  Id. (quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926)).  Therefore, a court should not "reflexively hold[] a final order in abeyance pending review."  Id.  Nevertheless, it is well settled

that the power to stay execution of a judgment pending appeal is "part of [a court's] traditional equipment for the administration of justice." Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9-10 (1942).

Pursuant to Rule 8 of the Federal Rules of Appellate Procedure, a motion to stay execution of the trial court's judgment pending appeal ordinarily must be filed in the trial court first. See Fed. R. App. P. 8(a)(1)(A); see also Wolfchild v. United States, 108 Fed. Cl. 578, 583 (2013) ("Notwithstanding the pendency of an appeal, a motion for stay should first be filed in the trial court."). If the trial court denies the motion, the applicant may seek the same relief in the appellate court. Fed. R. App. P. 8(a)(2)(A)(ii).

In entertaining a motion to stay a judgment brought under Rule 62(d) of the Rules of the United States Court of Federal Claims ("RCFC"), the court considers four factors: (1) whether the moving party has made a strong showing that it is likely to succeed on the merits; (2) whether the moving party will be irreparably injured absent the requested relief; (3) whether the requested relief will substantially injure the other parties interested in the proceeding; and (4) the public interest. Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed. Cir. 1990); Alaska Cent. Express, Inc. v. United States, 51 Fed. Cl. 227, 229 (2001). The court need not assign each factor equal weight. Standard Havens, 897 F.2d at 512.

Consequently, relief is appropriate where the moving party "'establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits,' provided the other factors militate in [its] favor." Id. at 513 (quoting Hilton, 481 U.S. at 778). When the equitable factors weigh decidedly in the moving party's favor, "it will ordinarily be enough that the [moving party] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." Id. (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)); accord Alaska Cent., 51 Fed. Cl. at 230 ("[I]f the equities weigh heavily in favor of maintaining the status quo, this court may grant an injunction under RCFC 62([d]) where the question raised is novel or close, especially when the case will be returned to the trial court should the movant succeed.").

### B. Analysis

#### 1. Likelihood of Success on the Merits

Defendant first argues that it was not irrational for State to cancel the solicitation and resolicit the contract requirement without disqualifying Torres. As the court has explained, however, a corrective action that does not address the CO's improper disclosure to Torres is fundamentally flawed and irrational. Nothing in defendant's motion persuades otherwise.[3]

---

[3] Curiously, defendant argues that the court "never clearly held that State's corrective action was an irrational response to the flaw in the 2019 procurement, considered alone." Def.'s Mot. 4. That is incorrect. The court concluded that the agency's notice of corrective action, which included an invitation to Torres to compete in a new procurement for the contract

Defendant's "rational corrective action" argument does not have a strong likelihood of success on appeal, for the reasons stated in the Opinion. See Alaska Cent., 51 Fed. Cl. at 230 ("If the court considered that [the movant requesting an injunction pending appeal] would succeed on the merits, it would not have ruled against [the movant] in the first place . . . .").

Defendant also contends that the court failed to consider how State might mitigate the CO's improper disclosure to Torres in a new procurement. Defendant did not raise this argument in either its motion for judgment on the administrative record or in its reply brief. In other words, in the briefing of the merits of SAGAM's protest, defendant did not suggest that a mitigation plan could potentially permit Torres to fairly compete against SAGAM in a new procurement.[4]

This mitigation argument is not likely to succeed, first, because the Federal Circuit rarely considers nonjurisdictional arguments raised for the first time on appeal. See, e.g., Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (discussing waiver, on appeal, of arguments not timely raised before the trial court). Second, defendant's speculation as to the potential effectiveness of a hypothetical, and unspecified, mitigation plan is not sufficient to counter the irrationality of the agency's actual corrective action reviewed by the court. The CO's improper disclosure to Torres tainted any potential contract award to Torres and rendered the issuance of a new solicitation fundamentally unfair and irrational. Accordingly, defendant's attack on the court's holding that the agency's corrective action was irrational is not likely to succeed on appeal and, indeed, fails to raise a substantial case on the merits.

Turning now to defendant's contention that this court lacks the authority to issue the type of injunctive relief awarded to SAGAM, the court states, at the outset, that defendant mischaracterizes the relief awarded. According to defendant, this court substituted its own remedy for the agency's corrective action and awarded the contract to SAGAM. See Def.'s Mot. 5-6 (stating that the court "lacks authority to substitute its own remedy" for a rational agency corrective action and that the court "lacked authority to order State to disqualify Torres and to award the contract to SAGAM"). The authority for this court to address irrational agency corrective action is well established. See, e.g., Sys. Application & Techs., Inc., v. United States, 100 Fed. Cl. 687, 719, 722 (2011) (finding the agency's corrective action to be irrational and awarding injunctive relief to the protestor), aff'd on the issue of jurisdiction, 691 F.3d 1374 (Fed. Cir. 2012).

It is also clear that when this court invalidates an agency's corrective action, a contract

---

requirement, was irrational. See SAGAM, 2021 WL 3140559, at *10 & n.9 ("The court therefore agrees with SAGAM that the cancellation decision lacks a rational basis, as does State's plan to resolicit the requirement.").

[4] The court ordered supplemental briefing on four different proposals for injunctive or other relief that were suggested by the parties, but specifically instructed that these briefs did not provide an opportunity for the parties to present additional argument on the merits. Order, June 11, 2021.

award to the protestor may result.  See id. at 720 (noting that the effect of the injunctive relief awarded in that case would mean that the protestor was "100% certain to be the contract awardee").  Although defendant argues that there is a distinction between restoring a contract award threatened by agency corrective action and directing an agency to award to the only lawful bidder remaining in the competition once the agency's errors have been corrected, the court's injunctive relief here was specifically tailored to address the circumstances of this procurement and the lack of fairness in State's treatment of SAGAM.  The court's review of similar protest scenarios in its Opinion showed that improper disclosures to an offeror sometimes require disqualification to level the playing field; the court concluded that the disqualification of Torres was the "only reasonable corrective action" available to State here.  SAGAM, 2021 WL 3140559, at *13.  The court also concluded that restoring this competition to its status quo before the irrational cancellation, disqualifying Torres, and then completing the award process with one offeror remaining in the competition was the only solution "that cures the PIA violation and does not penalize SAGAM for the improper behavior of the CO."  Id. at *17.

The court has considered defendant's arguments regarding the limited nature of this court's injunctive powers and does not believe that they are likely to succeed on appeal.  The court also does not believe that defendant presents a substantial case on the merits.  Although defendant contends that this court could not order State to disqualify Torres or to reinstate the competitive range it had established before the CO acted improperly, both of these actions are absolutely essential to comply with the FAR and to rationally respond to the CO's PIA violation.

The court acknowledges, nonetheless, that the CO's actions, which were contrary to law, were highly unusual and egregious.  Thankfully, protests involving actual procurement integrity violations are relatively rare, as are injunctions issued in the context of corrective actions focused on such violations.  Because of the sparseness of authority discussing injunctive relief in such circumstances, defendant's contentions regarding the scope of the court's injunction, when viewed in the most favorable light possible, may present a substantial issue for the Federal Circuit to consider on appeal.  But even if this is true, the court must still consider the other factors set forth in Hilton.

### 2. Irreparable Harm to the United States

The only irreparable harm argued by defendant is the potential that its appeal would be mooted absent a stay.[5]  Under the mootness doctrine, when "the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed."  Chapman L. Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 939 (Fed. Cir. 2007).  Here, defendant argues, if State awards the contract to SAGAM, its appeal of the court's judgment is highly likely to be ruled moot.  The court does not agree that the potential applicability of the doctrine of mootness constitutes irreparable harm to the government.

---

[5]  Defendant does not mention the agency's contract requirements, even once, in the context of the irreparable harm factor.  It would appear, then, that the disqualification of Torres and the award of the contract to the remaining offeror in the competitive range would cause State no harm.

First, if this court declines to stay the execution of its judgment, defendant can seek a stay from the Federal Circuit, providing it with the opportunity to avoid dismissal of its appeal on mootness grounds. Second, as defendant notes, there are exceptions to the doctrine of mootness. For example, there is

> an exception to the mootness doctrine for a controversy that is "capable of repetition, yet evading review." That exception applies "only in exceptional situations," where (1) "the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration," and (2) "there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."

Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1976 (2016) (alterations in original) (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). If the execution of the judgment is not stayed, defendant may have success invoking this exception before the Federal Circuit since that court has applied it twice this year in the bid protest context. NIKA Techs., Inc. v. United States, 987 F.3d 1025, 1027-28 (Fed. Cir. 2021); Veterans4You LLC v. United States, 985 F.3d 850, 856 n.3 (Fed. Cir. 2021). Dismissal of defendant's appeal on mootness grounds is far from certain. For this reason, defendant has not shown that it would suffer irreparable harm absent a stay and this factor does not weigh in its favor.

### 3. Substantial Injury to the Other Party

SAGAM, on the other hand, will suffer a substantial injury if the court's judgment is stayed. State was directed to disqualify Torres and reinstate the award process on June 25, 2021. Implicit in defendant's motion for a stay, filed August 30, 2021, is the reality that State had not yet complied with the court's judgment by that date. SAGAM, in its opposition brief, asserts that State continues to refuse to implement the court's judgment, "in direct contravention of the Court's Order." Pl.'s Opp'n 1.

State's extremely lethargic response to the court's order compounds the delays in this procurement caused by the CO's PIA violation. As noted by SAGAM, "SAGAM loses the benefits of the new contract opportunity, . . . in terms of . . . the potential impact on its workforce by having only a temporary contract in place, instead of being able to assure its employees of a longer-term employment opportunity that typically comes with a new contract award." Id. at 10. The CO, in a declaration filed by defendant on June 16, 2021, attested under penalty of perjury that SAGAM had already lost forty guards to employment opportunities elsewhere as of May 2021. Def.'s Suppl. Br. Ex. 1 at 3. SAGAM will suffer a substantial injury if State is allowed to further delay its compliance with the court's order pending appeal. This factor weighs against defendant's request for a stay of the court's judgment.

### 4. Public Interest

The public interest factor is also not in defendant's favor. Defendant argues that it is in the public interest for the Federal Circuit to review this court's judgment. But, as noted earlier in this opinion, it is far from certain that the government's appeal will be dismissed as moot, so the

appellate process is functioning as it should. In addition, defendant's invocation of the sanctity of the judicial process rings hollow in light of State's apparent willingness to drag its feet rather than to comply with an injunction issued by this court.

The court observes, too, that defendant has identified no extraordinary circumstances where the mission of State in Senegal would be better served by a stay of this court's judgment. Absent extraordinary circumstances, there is no public interest in intruding into the normal course of the adjudication of bid protests by this court. Indeed, SAGAM argues, and the court agrees, that a timely contract award would serve the interests of national security. Stability in the guard workforce at the embassy in Senegal is in the public interest. Cf. id. ("A well-trained, fully staffed, and adequately compensated guard force is essential to ensure the safety of the embassy and its staff."). Transitioning from temporary, short-term contracts to a single, longer-term contract would serve the public interest by removing the cloud of uncertainty hampering State's acquisition of guard force services in Senegal.

### III. CONCLUSION

Defendant has not shown a strong likelihood of success for its appeal. Consequently, a stay pending appeal is appropriate only if defendant presents a substantial case on the merits and the balance of hardships tips in its favor. Standard Havens, 897 F.2d at 512-13; Alaska Cent., 51 Fed. Cl. at 230. Although one of defendant's arguments, when viewed most favorably to defendant, could be considered to present a substantial case on the merits, the remaining factors to be considered weigh against the issuance of a stay. The court therefore **DENIES** defendant's motion for a partial stay of the judgment.

The court has filed this ruling under seal. The parties shall confer to determine agreed-to proposed redactions, if any. Then, by **no later than Friday, October 22, 2021**, the parties shall file a joint status report indicating their agreement with the proposed redactions, or their agreement that no redactions are needed, **attaching a copy of those pages of the court's ruling containing proposed redactions, with all proposed redactions clearly indicated**.

Further, the court reminds defendant of its obligation under paragraph 12 of the protective order filed on March 31, 2021, to file a redacted version of its sealed reply brief filed September 20, 2021. Defendant shall file its redacted reply brief **by no later than Friday, October 22, 2021**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge